### SAMUEL ALLEN *versus* EMORY SCOTT *et al.*

Where land was conveyed with all the buildings standing thereon *except the brick factory*, it was *held*, that the grantor's title to the land on which the factory stood and the water privilege appurtenant thereto, did not pass by the deed.

THIS was a bill in equity setting forth, that on January 25, 1836, the complainant was seised, as tenant in common with the respondents, who composed the South Mendon Company, of an undivided fourth part of a brick factory standing on land

of the respondents, in Mendon, together with one half of the water wheel and gearing in the same, and continued to be so seised ; that ever since that time the respondents had been in the exclusive occupation of the factory, receiving the rents and profits thereof ; and that the complainant had demanded his proportion thereof, or permission to occupy his part of the factory, but the respondents had refused to comply with such demand.

The bill further set forth, that on January 27, 1836, Benjamin Ray, one of the respondents, having obtained judgment against Joseph Ray, under whom the complainant claimed, levied an execution on an undivided fourth part of the land under the factory, and caused the same, together with the fourth part of the factory claimed by the complainant, to be set off upon the execution, by metes and bounds, as the real estate of Joseph Ray ; that the South Mendon Company, including Benjamin Ray, were, at the time of such levy, and still were, owners in fee of all the land on which the factory stood, by virtue of a deed from Amariah Taft, dated August 27, 1835 ; that three fourths of the factory were excepted in the deed, and the company had since bought one half of it, as personal estate ; and that the company had never objected to the levy upon their land, but used it as a pretence merely for non-payment of rent and for refusing the complainant permission to occupy.

The complainant prayed, that the defendants might be required to pay to him his proportional part of the rents and profits of the factory, and for further relief.

The answer set forth, that from January 25, 1836, to the time of filing the bill, the respondents, as copartners under the firm of the South Mendon Company, occupied three fourths of the factory, which had been conveyed to the respondents jointly, undivided and in common ; that in April, 1836, Benjamin Ray gave them permission to occupy the other undivided fourth part, which permission had not been revoked ; and that the respondents were advised and believed, that the complainant claimed title to such other fourth part, under a sale thereof made by an officer upon an execution against Joseph Ray, as of personal estate, which sale was void, because the property

was in fact real estate. And Benjamin Ray, one of the respondents, says, that on the 27th of January, 1836, by virtue of a levy of an execution in his favor against Joseph Ray, he acquired seisin and possession, and, as he believes, became the owner in fee simple of an undivided quarter part of the factory and the land under the same and the appurtenances thereof.

It appeared in evidence, that on March 30, 1821, James Paine, being the owner of a large tract of land, mortgaged it to Amariah Taft; that on August 18, 1823, Paine conveyed the equity of redemption to Joseph Ray and Riley Scott; that in 1824 the factory was built by Riley Scott, Joseph Ray and Caleb Colvin, on a part of this land; that on October 8, 1825, Scott quitclaimed to Paine; that on June 4, 1829, Paine and Joseph Ray, being tenants in common of the land, mortgaged it with all the buildings standing thereon, *except the brick factory*, to Amariah Taft; that on October 4, 1834, the executor of Paine conveyed to Taft all Paine's right, title and estate in the land and in the buildings thereon, except the brick factory or cotton mill standing thereon, — also an undivided fourth part of the brick factory standing on a part of the land, — the deed reciting that two other undivided fourth parts were the property of Colvin, and that the remaining undivided fourth part was the property of Joseph Ray; that on May 7, 1835, Joseph Ray's equity of redemption in the land and the buildings thereon, except the brick factory, were sold on execution to Taft, that on August 27, 1835, Taft conveyed to some of the defendants, the land, with all the buildings thereon, except three fourths of the brick factory; that on August 31, 1835, W. S. Hastings conveyed to some of the defendants "one undivided half of the brick factory standing on their land," being Colvin's half, which had been previously purchased by Hastings at a sheriff's sale thereof as personal estate; that on August 12, 1835, the plaintiff purchased an undivided fourth part of the factory, it having been sold to his vendor as personal property, on an execution against Joseph Ray; and that on January 27, 1836, Benjamin Ray levied an execution against Joseph Ray upon the same fourth part as real estate.

*Barton* and S. *Allen*, for the plaintiff, contended that the

*Oct. 6th.*

factory was personal estate ; that it was originally severed from the real estate, by being erected by Scott, Ray and Colvin on land of Scott and Ray, and which was then under mortgage to Taft ; and that it was likewise severed by the manner in which it had been subsequently transferred.

*Washburn*, for the defendants, cited *Ashmun* v. *Williams*, 8 Pick. 402 ; *Mercey* v. *Darling*, 8 Pick. 283 ; *Doty* v. *Gorham*, 5 Pick. 487.

*Oct. 8th.*    WILDE J. delivered the opinion of the Court. The plain-' tiff alleges in his bill, that he was seised and possessed, on the 25th of January, 1836, of an undivided fourth part of a certain brick factory, in common with the defendants, and continued so seised and possessed up to the time of filing the bill, and claims his proportional part of the rents and profits received by the defendants during that time. The defendants deny the plaintiff's title to any part of the factory ; and the case depends on the question of title. Other questions have been raised and argued, but they become immaterial, as the plaintiff, in the opinion of the Court, has failed to show any title to the premises claimed.

Both parties claim title under one Joseph Ray. The plaintiff, having recovered judgment against Ray, levied his execution on one fourth part of the factory as his personal property ; and Benjamin Ray, one of the defendants, having also recovered judgment against Joseph Ray, levied his execution on the same fourth part of the factory, and on the land on which the factory stood, as the real estate of Joseph Ray. It appears in evidence, that before either of these executions was levied, Joseph Ray had mortgaged his share of the lot of land on which the factory stood, excepting however the factory ; and the argument for the plaintiff is, that this exception extends only to the factory building, and not to the land under it, nor to the water power as appurtenant thereto ; and consequently, that as Joseph Ray had no title to the land nor any interest in it, the factory building must be considered as personal estate This argument, however, cannot, as we think, be maintained. This exception in Ray's mortgage, like a grant, must be construed according to the meaning of the parties, if not inconsistent with the rules of law.

From the nature of the property there seems to be no question as to the meaning of the parties. They undoubtedly intended that the mortgager should continue to have the same title in the factory, and to occupy and enjoy it in the same manner as he had done, and had a right to do, previous to the mortgage. He cannot be supposed to have reserved his portion of the building for the purpose of removing it ; for this, if it could be done, would be nearly a total destruction of the property. And besides, the factory could not be divided so as to allow Ray to hold his part in severalty ; and he had no right to remove the building without the consent of the other tenants in common. It follows therefore, that he could hold and enjoy nothing of any value under the exception, unless he had the right to occupy the factory, with the other tenants in common, as it stood at the time of the mortgage ; and we think it very clear that he had this right under the exception in the mortgage deed. Such a right of occupation is an interest in the land amounting to an estate in fee, defeasible perhaps by the destruction of the factory ; but of this it is not necessary to give an opinion. Nor is it necessary to decide, that Joseph Ray had an estate in fee in the land ; for if he had any right and interest in the land, the factory was not severed from the realty, and was not personal estate. That he had, with the other tenants in common, the exclusive right to the occupation of the land on which the factory stood and to the enjoyment of the water privilege, cannot, we think, admit of a reasonable doubt. When property is granted, all that is necessary to the enjoyment of the grant is impliedly granted as incident to the express grant ; and the same rule of construction applies to an exception in a grant.

By the grant of a house a conduit which conveys water to the house passes. Bac. Abr. *Grant*, *I* 4. So, by a grant of a messuage or house, the garden and curtilage pass. Co. Litt. 5 *b*; *Carden* v. *Tuck*, Cro. Eliz. 89. And if a man grant *omnes boscos suos*, the land, as well as the wood, passes. So, if he grant a boilery of salt, the land passes. Co. Litt. 4 *b*. In the case of *Archer* v. *Bennet*, 1 Lev. 131, it was found by special verdict, that A being seised of a mill and of a kiln at the end of the close wherein the mill stood, granted the mill ;

*Allen*
*v.*
*Scott.*

<div style="margin-left">Allen<br>
<i>v.</i><br>
Scott.</div>

and the question was, whether the kiln passed ; and it was held, that it would have passed if it had been found that the kiln had been necessary to the mill. So, a grant of a mill passes the right to the water also. Bac. Abr. *Grant*, *I* 4 ; *Wetmore* v. *White*, 2 Caines's Cas. 87.

A similar rule of construction applies to exceptions in a grant. Thus, if a man lets his manor except the woods, underwoods, &c. the soil is excepted. 2 Roll. Abr. 455 ; *Ive* v. *Sams*, 2 Cro. Eliz. 521.

Upon these authorities and rules of construction we think it very clear, that Joseph Ray's title to the factory and the land on which it stood, and the water privilege, did not pass by his mortgage deed ; and that by Benjamin Ray's levy the title passed to him, and is a valid title, subject only to a prior out standing mortgage which does not affect the question of title between the present parties.

<div style="text-align: right"><i>Bill dismissed</i></div>